Shaun F. Carroll (SC 9898)
Nourse & Bowles, LLP
One Exchange Plaza
New York, New York 10006
Telephone:  (212) 952-6200
Facsimile:  (212) 952-0345
E-mail:     scarroll@nb-ny.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

| | |
|---|---|
| F.H. BERTLING HOLDING KG, | |
| Plaintiff, | 08 Civ. 2003 (SAS) |
| - against - | |
| | (ECF) |
| RANHILL ENGINEERS AND CONSTRUCTORS SDN. BHD., | **UNSWORN DECLARATION OF ALAN SCOTT** |
| Defendant. | |

-----------------------------------------------------------X

I, Alan Scott, hereby make this Declaration pursuant to 28 U.S.C. §1746, and state as follows:

1.  I make this Declaration in Reply to the Declaration of Folker Lehning dated May 14, 2008. I am and have been since March 1, 2006 Project Director for Amona Ranhill Consortium (ARC) in charge of on site construction activities.

2.  I met with Mr. Lehning on a number of occasions in and around May through October 2007 in connection with his acting as a logistics consultant for the

housing project in Tajura, Libya. I disagree with Mr. Lehning's statement that logistic planning was at a "peak" during his tenure. There was, and is, no "peak".

3.  At that time I was making very preliminary inquires into sourcing cement and heavy machinery, and I was considering purchasing the cement in China, among other places, and shipping to Libya. I probably discussed that with Mr. Lehning from time to time.

4.  I do not recall ever telling Mr. Lehning that it was "always" anyone's "intention" to use seagoing vessels "for the transport of heavy machinery", or that the "primary objective of the … transportation and logistics services to be provided by F.H. Bertling and its affiliates … would be maritime in nature," as Mr. Lehning puts it. Nor do these sound like words I would use.

5.  My intention is always to get the best material available at the best price and transport it in the most reasonable manner available in keeping with my deadline. Each factor influences the other to some degree.

6.  My recollection is that we eventually decided not to purchase the cement in China because the cost of shipping made it too expensive, and we found a supplier who was able to provide us with ready mixed concrete on site in Libya at a more competitive price. I believe Mr. Lehning was no longer involved by the time that decision was made.

7.  Given the availability of the ready mixed concrete in Libya, I do not believe Mr. Lehning's employer, Bertling, would have made any arrangements for ocean carriage of cement from China or anywhere else.

8. I declare under penalty of perjury pursuant to 28 U.S.C. §1746 that the foregoing is true and correct.

_____
Alan Scott

Dated May 30, 2008