UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
F.H. BERTLING HOLDING KG,          :
                                   :
        Plaintiff,                :
                                   :           08 Civ. 2003 (SAS)
        - against -              :
                                   :                (ECF)
RANHILL ENGINEERS AND CONSTRUCTORS  :
SDN. BHD.,                         :
        Defendant.                 :
------------------------------------------------------------------X

## DEFENDANT'S REPLY MEMORANDUM OF LAW

Shaun F. Carroll
Julia M. Moore
Nourse & Bowles, LLP
One Exchange Plaza, At 55 Broadway
New York, New York 10006

**TABLE OF CONTENTS**

STATEMENT ................................................................................................................ 1

I  RANHILL WITHDRAWS ITS EXECUTORY CONTRACT ARGUMENT
IN DEFERENCE TO THE PENDING ARBITRATION ............................................. 2

II  THE LOGISTICS AGREEMENT WAS A NON-MARITIME
PRELIMINARY SERVICES CONTRACT ................................................................. 3

III  THE LOGISTICS AGREEMENT WAS NOT PRIMARILY MARITIME ............ 6

IV  THAT THE MOBILIZATION FEE MAY HAVE BEEN DERIVED FROM
THE SETTLEMENT FROM A PRIOR CONTRACT DISPUTE DOES NOT
CREATE MARITIME JURISDICTION ..................................................................... 9

CONCLUSION ........................................................................................................... 10

# TABLE OF AUTHORITIES

Cases

*American Home Assur. Co. v. Merck & Co.*, 329 F.Supp. 2d 436 (S.D.N.Y. 2004) ....................... 8

*Brown v. M/V Global Link*, slip op. 01 Civ. 8298 (DC, Aug. 26, 2003), 2003 U.S. Dist Lexis 14723 *5 ................................................................................................................................. 9,

*Deval Denizcilik Ve Tigaret A.S. v. Agenzia Tripcovich S.R.L.*,
    513 F. Supp. 2d 6, 8 (S.D.N.Y. 2007) ....................................................................................... 9

*Maritima Petroleo E Engenhard Ltda. v. Ocean Rig 1 AS*,
    78 F.Supp 2d 167 (S.D.N.Y. 1999) .................................................................................. 2, 4, 6

*Norfolk Southern RY Co. v. Kirby*,
    543 U.S. 14 (2004) ................................................................................................................ 6, 7

*Sea Transport Contractors, Ltd. v. Industries Chemiques du Senegal*,
    411 F.Supp. 2d 386 (S.D.N.Y. 2006) ..................................................................................... 5, 6

Shaun F. Carroll (SC 9898)
Nourse & Bowles, LLP
One Exchange Plaza, At 55 Broadway
New York, New York 10006
Telephone: (212) 952-6200
Facsimile: (212) 952-0345
E-mail: scarroll@nb-ny.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
F.H. BERTLING HOLDING KG,

        Plaintiff,

        - against -

RANHILL ENGINEERS AND CONSTRUCTORS
SDN. BHD.,

        Defendant.
------------------------------------------------------------X

08 Civ. 2003 (SAS)

(ECF)

## DEFENDANT'S REPLY MEMORANDUM OF LAW

### STATEMENT

Bertling is not entitled to a Rule B maritime attachment because its claim is based on a highly preliminary, generalized, land-based construction logistics management contract, and it cannot escape that fact by postulating the possible performance of imaginary, never performed and never called for ocean shipments of never purchased cargo.

Bertling's invitation to jurisdiction by speculation is particularly unwarranted where, as here, there is hard evidence that the contract at issue would never have entailed any substantial maritime activity in any event. The company which won the Libyan Housing Project which Bertling had hoped to benefit from, has managed to source 90% of the material needed to carry

out the job in or near Libya. (McFarlane Dec. ¶¶ 4, 5, 6). There is, was and never would have been any inevitable need for a significant amount of ocean carriage. (McFarlane Dec. ¶¶ 6, 7).

Plaintiff's memorandum and affidavits in opposition to Ranhill's order to show cause to vacate the Rule B are nothing more than attempts to create a maritime contract where none exists. The indiscriminate use of Rule B is not a practice to be encouraged. The fundamental issue before this Court is whether the subject matter of the contract "directly and intimately related to the operation of a vessel and navigation" or was it "too far removed from navigation or maritime commerce to justify the exercise of federal maritime jurisdiction." Maritima, 78 F. Supp.2d 162 at 169, citing 1 Schoenbaum on Admiralty 3-10 at p. 111. The answer is that the Logistics Agreement was so far removed from any genuine maritime activity that the exercise of maritime jurisdiction, particularly in service of a Rule B attachment, is entirely unwarranted.

## I

## RANHILL WITHDRAWS ITS EXECUTORY CONTRACT ARGUMENT IN DEFERENCE TO THE PENDING ARBITRATION

Ranhill's main brief argues that the subject contract is not within the maritime jurisdiction of this Court because it was executory. See pg. 8-9 Main Brief. While Ranhill contends that this position is correct, the memorandum and affidavits filed by the Plaintiff Bertling in opposition to this argument make clear that this Court cannot resolve this issue without deciding fact questions that should be reserved for the arbitrators.[1] Ranhill, therefore, withdraws the executory contract argument solely for the purposes of this Order to Show Cause

---

[1] Bertling has demanded ICC arbitration.

and to protect its right to have the merits of the contract action decided at arbitration. Ranhill is not conceding any point on which Bertling's opposition is based, nor is it waiving its right to assert this defense at arbitration or at any time in the future in this, or any other, proceeding.

Ranhill also vigorously disputes and denies the unfounded imputations of Mr. Norman's credibility and/or character contained in Bertling's affidavits and memorandum of law. Given the fact that Bertling's witnesses and counsel have unfairly abused Mr. Norman in its papers, it is only right and fair to disabuse the Court of any negative impression that may have been left.[2] Those facts are set out in the Metcalf and Norman Reply declarations and will not be repeated herein. The main issue to be decided by this Court is the question of maritime jurisdiction, and that issue can be determined without reference to whether the contract was executory.

## II

## THE LOGISTICS AGREEMENT WAS A NON-MARITIME PRELIMINARY SERVICES CONTRACT

Bertling's contention that the Logistics Agreement "required" it to provide ocean carriage services does not bear examination. The "Logistics Agreement" is not a contract "to do" anything. It is a standby agreement made in contemplation of further agreements contingent upon the occurrence of an, as yet, unrealized predicate agreement, giving rise to and defining the potential service needed, which may or may not be maritime in nature, depending on a list of other variables. It is hard to imagine anything more "preliminary". (Metcalf Dec. ¶¶ 15-18).

The preliminary nature of the Agreement is clear from its wording. Paragraph 1 states that: "the purpose of this Agreement is to set out *general terms and conditions* under which

---

[2] It should be obvious that the hallmark of contract litigation is the adoption of divergent views on the parties' respective duties and obligations under the contract. The assertion of a contrary legal position does not make one party a liar.

Bertling shall provide the logistic requirements." (emphasis added); paragraph 2 states that "the detailed scope of Bertling's services *shall be subject to the logistics scope of the work contracted by REC* and advised to Bertling accordingly;" (emphasis added) and further reserves to Ranhill the <u>right</u> to procure materials from vendors on a CIF basis whenever it is in "the best interest of REC", in which case there would be <u>no</u> need for Bertling to ship anything because CIF contracts require the supplier to arrange transport (Metcalf Dec. ¶ 13); paragraph 3 sets forth the requirement that the parties will *meet to agree about the scope of the services to be performed* by Bertling, to agree upon a schedule for performance, to agree upon a management team and a budgeted cost for same (Emphasis added); paragraph 4 establishes a steering committee; and paragraphs 11 and 12 reserve Ranhill's right to terminate the Agreement and to vary the scope of the services to be provided, again including the right to procure materials and equipment from its own suppliers and to arrange for those suppliers and vendors to handle their own logistics without using Bertling's services. The entire agreement is prospective and conditional in nature.

Nor does the fact that Bertling claims to have partially performed the Agreement change the analysis. The fact that Mr. Lehning may have provided some land-based logistics consultancy services <u>prior to</u> any shipments (which never occurred in any event) does not render the contract less preliminary to any maritime services.

For these reasons, Plaintiff's attempt to distinguish this Court's decision in <u>Maritima Petroleo E Engenhard Ltda. v. Ocean Rig 1 AS</u>, 78 F.Supp 2d 167 (S.D.N.Y. 1999) by arguing that the Logistics Agreement obligated Bertling "to provide ocean and transportation related services" and not merely to "procure contracts" for same, fails and its reliance on <u>Sea Transport</u> is misplaced. The potential need for maritime services remained contingent at the time of contracting. Bertling's "obligations" were entirely dependent upon REC's as yet non-existant

(and a priori undefined) "needs". Any maritime services which might have been performed were all dependent upon the scope and schedule of the construction project as well as the source of the materials to be purchased which were, by the specific terms of the Agreement, all to be determined at some future point in time.

In comparison, in Sea Transport Contractors, Ltd. v. Industries Chemiques du Senegal, 411 F.Supp. 2d 386 (S.D.N.Y. 2006) plaintiff, STC, was "presently" bound to perform maritime services at the time of contracting. Id. at 394. In this case, Bertling, upon signing the contract, was not immediately bound, in the sense of being presently charged, to do anything but wait and see whether any of the contingencies in the Logistics Agreement would be satisfied, including whether any ocean transit would be necessary. Thus, it is incorrect for Bertling to draw a comparison to this case when its own performance under the Logistic Agreement remained contingent and undefined.

Sea Transport is also distinct because that contract clearly identified types of cargo, quantities to be shipped, minimum rates for loading and discharge of ships and inspection of cargoes for import and export, and required STC to buy charterer's liability and hull insurance. The Sea Transport court rejected ICS's effort to characterize the entire contract as a preliminary "charter-brokerage" agreement because the true "nature and subject matter" of the agreement was not just chartering, but was appointment of STC "as agent *and the exclusive handler of the sea transportation (shipping management function) of all its imports and exports.*" 411 F. Supp. 2d at 390 and 393, citing Exxon v. Central Gulf Lines, Inc, 500 U.S. 603 (1991).

There was a certainty to STC's sea transportation duties, as set forth in the contract, which stands in sharp contrast to Bertling's contingent status under the Logistics Agreement which could be fully performed without a single ocean shipment of cargo. As the Metcalf

declaration makes clear, the Logistics Agreement was not, when executed, primarily anything other than a generalized contract to perform whatever construction services were required as the project developed and went forward including materials management, manpower, permits, health and safety, road building among others. Its potential as a maritime contract would only be realized by a need for ocean shipping, which did not exist at the time of contracting, and ever arose. (Metcalf Dec. ¶18).

There is no appreciable difference between the Logistics Agreement and the MOA in Maritima. In both cases, the disputed contract called for nothing more than future contract negotiations. As the Court noted: "an agreement which merely sets the stage and conditions for the possible opening of land-based negotiations is not maritime." Id. at 170. This Court then confirmed that:

> Even if the MOA were a mixed contract, it would still not warrant the exercise of admiralty jurisdiction because the bulk of the agreement concerns a non-maritime matter (future contract negotiations) and the maritime portion of the MOA (furnishing rigs) is entirely dependent upon the non-maritime matter. Therefore, Maritima's breach of contract does not fall within the Court's admiralty jurisdiction.

Maritima, 78 F. Supp 2d at 171.

The Logistics Agreement merely set the stage for future negotiations which never came to fruition. The Agreement is preliminary and, therefore, maritime jurisdiction does not attach.

### III

### THE LOGISTICS AGREEMENT WAS NOT PRIMARILY MARITIME

The issue before the Court is whether the "principal objective" of the Logistics Agreement is maritime. See, Norfolk Southern Ry. Co. v. Kirby, 543 U.S. 14 (2004) ("Kirby"). Since the Logistics Agreement does not create any direct and intimate connection to a vessel,

6

Bertling tries to fill in these gaps by urging that the alleged maritime nature of the Logistics Agreement can be determined from Plaintiff's subjective intent and it offers extrinsic opinion evidence that Bertling "believed" ocean transit would be needed in its effort to create the maritime nexus needed for jurisdiction.[3] In support of this position, Plaintiff cites two pre-Kirby decisions that allegedly hold that the actual performance of a maritime service is not critical as long as the parties subjectively intended a maritime service to be performed at the time of contracting. See, Bertling memo at 15 citing, Transatlantic Marine and Berkshire Fashions. The quote, however, is taken out of context and plaintiff's substitution of the word "contract" for the word "bill of lading" to make the quote fit the argument is misleading.

Both Berkshire and Transatlantic Marine were pre-Kirby cases and the respective courts were wrestling with the "wholly" maritime contract doctrine, which potentially vitiated maritime jurisdiction even though actual ocean transit had occurred under multi-modal bills of lading. The adoption of the primarily maritime test by the Supreme Court has cured the anomaly so that obvious maritime contracts – like bills of lading calling for international ocean transit – are not deprived of admiralty jurisdiction because the cargo was also trucked to a warehouse. These facts distinguish both cases from the Logistics Agreement, which never specifically set forth any obligation to carry any cargo in any fashion because the parameters of the logistics services to be provided remained contingent and undefined.

As set forth in Ranhill's principal memorandum, the primary objective of the Logistics Agreement was the timely and expeditious completion of a construction project, which might or might not involve the transit of some equipment or materials by sea. While the possibility of maritime transit was certainly entertained by both parties at the time, marine shipping was just a

---

[3] Assuming that this Court can, or should, consider any extrinsic evidence when the contract is clear on its face.

sub-task that fell under the larger umbrella of "construction logistics" which was the Agreement's primary focus. Fulfillment of the Agreement's primary purpose could be done without a single ocean shipment. See Metcalf Dec. ¶ 18. The fact that both Ranhill and Bertling conducted inquiries into the potential costs of ocean shipment and/or surveyed freight rates for cement as part of the bid process for the Libyan construction project does not convert a construction contract into a maritime contract since no actual connection to a ship or maritime commerce was created. No case cited by Plaintiffs (or found by Defendant) permits a court to infer a maritime connection where none was articulated in the contract.

Bertling's position is analogous to that of Plaintiff, American Home, in American Home Assur. Co. v. Merck & Co., 329 F. Supp. 2d 436 (S.D.N.Y. 2004) where the insurer claimed that a transit policy covering pharmaceuticals was a maritime contract because it covered ocean shipments, contained some maritime specific coverage clauses and the policy was placed through a maritime agency. The court stated: "[none] of these details create a distinctly maritime contract, and the generalized, non-maritime scope of the Policy's coverage undermines any such claim." The policy was deemed a "decidedly neutral contract" which fell outside the Court's admiralty jurisdiction. Id. at 441.

Neither can this Court exercise maritime jurisdiction over the Logistics Agreement because the (contingent) maritime element is "severable" and capable of being separately enforced. While Bertling argues that a bill of lading or charter agreement "may" give rise to a severable claim and that any maritime obligations "could" be severed, these arguments simply highlight the fact that no "direct" or "intimate" maritime obligations were actually created by the Logistics Agreement and Bertling. This Court cannot exercise maritime jurisdiction over a non-

maritime contract because amorphous maritime claims might materialize if all contingencies underlying the Agreement are met.

## IV

### THAT THE MOBILIZATION FEE MAY HAVE BEEN DERIVED FROM THE SETTLEMENT FROM A PRIOR CONTRACT DISPUTE DOES NOT CREATE MARITIME JURISDICTION

Ranhill reiterates that a settlement agreement is not a maritime contract over which a court can exercise maritime jurisdiction. Fednav. See main brief at 13. The decisions cited by Bertling, Deval Denizcilik Ve Tigaret A.S. v. Agenzia Tripcovich S.R.L., 513 F. Supp. 2d 6, 8 (S.D.N.Y. 2007) and Brown v. M/V Global Link, slip op. 01 Civ. 8298 (DC, Aug. 26, 2003), 2003 U.S. Dist Lexis 14723 *5 are not to the contrary.

The Deval case was not a breach of a settlement agreement, but a guarantee contract that was issued to avoid imposition of a maritime lien on cargo. The court found that the guarantee was a "stand in" for the actual cargo, and maritime jurisdiction attached. In Brown the "maritime contract" over which the court exercised jurisdiction was a release of a seaman's personal injury claims that had previously been before the Court in admiralty. It is black letter law that a court retains jurisdiction over a litigated case to enforce the terms of a settlement agreement that results between those parties, and those parties do not have to re-establish admiralty jurisdiction. Neither decision speaks to the issue here, and Fednav remains the authority most on point.

Finally, the issue of whether the "mobilization fee" was, or was not, consideration for the Logistics Agreement has no bearing on whether the Logistics Agreement is maritime. Section 10(a) of the Logistics Agreement simply sets forth a payment schedule for that outstanding debt. As set forth in Ranhill's main brief, any maritime connection is simply too attenuated.

## CONCLUSION

There is nothing, primarily "maritime" about the preliminary construction and logistics contract before this Court. The Metcalf declaration confirms that the primary focus of the Logistics Agreement was construction and that this dispute is nothing more than an arbitrable contract dispute. The Rule B attachment has been misused and should be vacated.

Dated: New York, New York
      May 30, 2008

                                  Respectfully submitted,

                                  NOURSE & BOWLES, LLP
                                  Attorneys for Defendant
                                  RANHILL ENGINEERS AND
                                  CONSTRUCTORS SDN. BHD.

                        By: _____
                                  Shaun F. Carroll (SC-9898)
                                  One Exchange Plaza, At 55 Broadway
                                  New York, New York 10006
                                  Telephone:   (212) 952-6200
                                  Facsimile:     (212) 952-0345
                                  E-mail :       scarroll@nb-ny.com

SHAUN F. CARROLL, ESQ.
JULIA M. MOORE, ESQ.
    Of Counsel