UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                              :

F.H. BERTLING HOLDING KG,         :

                             :

           Plaintiff,          :         08 Civ. 2003 (SHS)

                             :

     - against -              :

                             :            (ECF)

RANHILL ENGINEERS AND          :
CONSTRUCTORS SDN. BHD.,      :

                             :

          Defendant.       :

                             :

                             :
-------------------------------------------------------------X

**MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO VACATE
RULE B ORDER OF MARITIME
ATTACHMENT AND GARNISHMENT**

SHAUN F. CARROLL, ESQ.
JULIA M. MOORE, ESQ.
     OF COUNSEL

NOURSE & BOWLES, LLP
ONE EXCHANGE PLAZA
AT 55 BROADWAY
NEW YORK, NEW YORK 10006
(212) 952-6200

## TABLE OF CONTENTS

Page No.

Statement ...............................................................................................................1

Summary of Facts ...................................................................................................2

I.    THE ATTACHMENT MUST BE VACATED AS
      PLAINTIFF FAILED TO STATE A MARITIME
      CLAIM AS REQUIRED BY RULE B ...................................................................3

II.   THE ATTACHMENT SHOULD BE VACATED BECAUSE
      THE COURT LACKS SUBJECT MATTER JURISDICTION ............................5

      (A)   THE SUBJECT MATTER OF THIS DISPUTE IS NOT MARITIME .....7

      (B)   THE LOGISTICS AGREEMENT IS AN EXECUTORY
            CONTRACT NOT COGNIZABLE IN ADMIRALTY.............................8

      (C)   THE LOGISTICS AGREEMENT IS A NON-MARITIME
            PRELIMINARY SERVICES CONTRACT..................................................9

      (D)   THE PRIMARY OBJECTIVE OF THE LOGISTICS AGREEMENT IS
            NOT MARITIME ......................................................................................10

Conclusion ............................................................................................................15

# TABLE OF AUTHORITIES

CASES

Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 2006 AMC 1872, 1885, 460 F.3d
    434, 445 n.5 (2 Cir. 2006) .................................................................................. 4

Aston Agro-Industrial AG v. Star Grain Ltd., 2006 U.S. Dist. Lexis 9163 at *3 (Dec. 20,
    2006 S.D.N.Y.) ........................................................................... 11, 12, 13. 14

Atlantic Mutual Ins. Co. v. Balfour Maclaize Int'l, Ltd., 775 F.Supp. 101, 105 (SDNY
    1991) aff'd, 968 F.2d 196, 199 (2d Cir. 1992) .................................... 7, 11, 15

Capital Yacht Club v. M/V AVIVA, 409 F. Supp.2d 1 (DC 2006) ........................... 11, 14

Compagnie Francaise de Navigation a Vapeur v. Bonnasse, 19 F.2d 777 cert. denied, 275
    U.S. 551 (1927) ...................................................................................... 15

Dolco Investments Ltd. v. Moon River Development Ltd.,
486 F.Supp.2d 261, 267-268 .......................................................................... 9

Exxon v. Central Gulf Lines, Inc., 500 U.S. 603, 611 (1991) ...................................... 9, 11

Fednav, Ltd. V. Isoromar, S.A., 925 F.2d 599, 601 (2d Cir. 1991) ................................. 13

Folksamerica Reinsurance Company v. Clean Water of New York,
413 F.3d 307, 312 (2d Cir. 2005) .............................................................. 6, 7, 11

Hartford Fire Ins. Co. v. Orient Oversees Container Lines (UK) Ltd., 230 F.3d 549, 555
    (2d Cir. 2000) ...................................................................................... 11, 14

Kossick v. United Fruit Co., 365 U.S. 731, 735 (1961) ....................................... 6

Kuehne & Nagel v. Geosource, Inc., 874 F.2d 283, 290 (5th Cir. 1989) ........................ 15

Maritima Petroleo E Engleharia Ltda v. Ocean Rig 1 AS, 78 F.Supp. 2d 162, 168
    (S.D.N.Y. 2000) ...................................................................................... 9, 10

Norfolk Southern Railway Co. v. Kirby, 543 U.S. 14, 25 (2004) ......................... 6, 10, 11

Proshipline Inc. v. Aspen Infrastructures Ltd. v. Suzlon Infrastructure Ltd., 533
    F.Supp.2d 422 (S.D.N.Y. 2008) .................................................................... 8

Rainbow Line, Inc. v. M/V TEQUILA, 480 F.2d 1024, 1027 (2d Cir. 1973) .................... 8

Shipping Financial Services Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) ........ 9, 10

Sirius Insurance Co (UK) v. Collins, 16 F.3d 34, 36 (2d Cir. 1994) .................................. 7

The Saturnus, 250 F. 407, 408 (2d Cir. 1918), cert. denied, 247 U.S. 511 (1918) ............. 8

Thypin Steel Co. v. Asoma Corp., 215 F.3d 273, 278-79 (2d Cir. 1994) ........................... 7

Transatlantic Marine Claims Agency, Inc. v. M/V HYUNDAI EMPEROR, 109 F.3d 105,
109 (2d Cir. 1997) ...................................................................................................... 15

Winter Storm Shipping, Ltd. v. TPI, 2002 AMC 2705, 2716, 310 F.3d 263, 272 (2d Cir.
2002) ......................................................................................................................... 4, 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                  :

F.H. BERTLING HOLDING KG,           :
                                  :
          Plaintiff,          :          08 Civ. 2003 (SHS)
                                  :
  - against -                  :
                                  :          (ECF)
RANHILL ENGINEERS AND CONSTRUCTORS:
SDN. BHD.,                          :
                                  :
          Defendant.         :
                                  :
                                  :
------------------------------------------------------------------X

**MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO VACATE
RULE B ORDER OF MARITIME
ATTACHMENT AND GARNISHMENT**

Defendant, Ranhill Engineers and Constructors Sdn. Bhd., ("REC") by its attorneys, Nourse & Bowles, submits this memorandum in support of its motion to vacate the Rule B Attachment obtained herein by plaintiff, Bertling Holding KG ("Bertling").

**<u>Statement</u>**

This case presents a motion to vacate a Supplemental Rule B Order of maritime attachment and garnishment obtained by Bertling, a professional construction logistics supplier in support of its claims for monies allegedly due and profits allegedly lost in respect of an entirely executory logistics supply contract ancillary to Defendant's unrealized contract to build large scale housing tracts in Libya. (Norman Dec. ¶¶ 7, 8)

Defendant moves to vacate the Order of Attachment and garnishment on the grounds that the Logistics Agreement at issue was entirely preliminary to any possible maritime contract, it was wholly executory in the actual event, and it would not have been primarily maritime in nature even if the contract had come to be performed,  which it was not.  For these reasons, Defendant Ranhill submits that the Complaint fails to state a maritime claim that is within the admiralty and maritime jurisdiction of the Court as required by Supplemental Admiralty Rule B of the Federal Rules of Civil Procedure ("Rule B") and, accordingly, plaintiff is not entitled to an order of maritime attachment and garnishment, the current Order permitting ex parte relief should be vacated and all monies or property restrained or levied must be released.  Defendant Ranhill also seeks recovery of costs, attorneys' fees and damages due to the improper attachment.

Defendant moves by Order to Show Cause because they are entitled to a "prompt hearing" pursuant to Supplemental Admiralty Rule E(4)(f), "at which the Plaintiff shall be required to show why the …attachment should not be vacated…"

### Summary of Facts

The facts of this matter are set forth in the declaration of Gareth Norman, the Senior Vice President Contracts and Commercial for defendant Ranhill Engineers and Constructors Sdn. Bhd. ("REC") (hereafter "Norman Dec.") dated April 21, 2008 and to which the Court is respectfully referred.  A copy of the subject Logistics Agreement is annexed thereto as Exhibit "1".  The Norman Dec. and Exhibit "1" are contained in the Carroll Affidavit as Exhibit "C". The relevant procedural facts are as follows:

Plaintiff Bertling commenced this action by filing its Verified Complaint and Rule B Attachment (hereafter "Complaint") on February 28, 2008 seeking damages for an alleged breach of a Logistics Agreement in the amount of $4,322,771.11 and further demanding issuance of an *ex parte* Order of Maritime Attachment and Garnishment against the assets of defendant Ranhill. Carroll Affidavit Ex. "A."

On February 29, 2008, this Court issued an Ex Parte Order of Maritime Attachment and Garnishment (the "Attachment Order") against the assets of defendant Ranhill. Carroll Affidavit Ex. "B."

Pursuant to that Attachment Order, plaintiff has attached multiple electronic funds transfers ("EFT's") totaling, to date, approximately $120,000.00 to or from defendant Ranhill with the consequent disruption of its ordinary business operations. It is unknown if, at the time of this filing, additional EFTs have been restrained.

# I

## THE ATTACHMENT MUST BE VACATED AS PLAINTIFF FAILED TO STATE A MARITIME CLAIM AS REQUIRED BY RULE B

Rule B sets forth the procedure to be followed in obtaining a maritime attachment or garnishment in aid of an in personam maritime claim. Rule B(1) provides in part:

> (a) If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property— up to the amount sued for—in the hands of garnishees named in the process.
>
> (b) The plaintiff or the plaintiff's attorney must sign and file with the complaint an affidavit stating that, to the affiant's knowledge, or on information and belief, the

3

defendant cannot be found within the district. The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment. The clerk may issue supplemental process enforcing the court's order upon application without further court order.

Upon the issuance of an ex parte Order of Attachment pursuant to Rule B, a Defendant is entitled to a prompt hearing at which the burden is on the plaintiff to prove compliance with the requirements of Rule B, or suffer vacatur of the attachment. Supplemental Admiralty Rule E(4)(f) provides in pertinent part:

Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.

Rule E(4)(f) "is designed to satisfy the constitutional requirement of due process by guaranteeing to the [defendant] a prompt post-seizure hearing at which he can attack the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings." Winter Storm Shipping, Ltd. v. TPI, 2002 AMC 2705, 2716, 310 F.3d 263, 272 (2d Cir. 2002) (quotation omitted). "Rule E(4)(f) clearly places the burden on the plaintiff to show that an attachment was properly ordered and complied with the requirements of Rules B and E." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 2006 AMC 1872, 1885, 460 F.3d 434, 445 n.5 (2 Cir. 2006).

In Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., the Second Circuit summarized the practice of maritime attachment under the Supplemental Rules:

[I]n addition to having to meet the filing and service requirements of Rules B and E, an attachment should issue if the plaintiff shows that (1) it has a valid prima facie admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's

> property may be found within the district; and (4) there is no statutory or maritime law bar to the attachment. Conversely, a <u>district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E</u>.  (emphasis added)

2006 AMC at 1884-85, 460 F.3d at 445 (footnote omitted)

Thus, Plaintiff must demonstrate that the claims at issue are "maritime" and are cognizable under the maritime and admiralty jurisdiction of this Court.  <u>Winter Storm Shipping, Ltd. v. TPI</u>, 310 F.3d 263, 268 (2d Cir. 2002)(Plaintiff's Rule B attachment requires that the "claim must be one which will support a finding of admiralty jurisdiction under 28 U.S.C. 1333." Citations omitted).

In the absence of a maritime claim, this Court lacks subject matter jurisdiction and the Complaint should be dismissed, the *ex parte* order vacated and any restrained funds or property released.

## II

### THE ATTACHMENT SHOULD BE VACATED BECAUSE THE COURT LACKS <u>SUBJECT MATTER JURISDICTION</u>

The issue before the Court is whether the Logistics Agreement on which the Complaint is predicated supports the exercise of this Court's federal admiralty jurisdiction.  The absence of maritime jurisdiction voids the Rule B attachment and requires dismissal of the complaint and the release of funds currently under restraint. <u>Winter Storm Shipping, Ltd. v. TPI</u>, 310 F.3d 263, 268 (2d Cir. 2002).

As discussed below, admiralty jurisdiction is not present because: (a) the subject matter of the dispute does not implicate maritime commerce; and (b) the Logistics Agreement is not a maritime contract.  The Logistics Agreement is simply an executory and/or preliminary contract whose primary objective is to further completion of land-based construction project(s). (Norman

Dec. ¶¶ 6, 7)  Any maritime obligations contemplated by that Agreement were too attenuated to maritime commerce or too tightly bound with non-maritime obligations to support the exercise of admiralty jurisdiction and a Rule B attachment.

The Supreme Court defines the parameters of admiralty jurisdiction over contracts as being "conceptual rather than spatial [and] difficult to draw." Kossick v. United Fruit Co., 365 U.S. 731, 735 (1961).

> While the "precise categorization of the contracts that warrant invocation of the federal courts' admiralty jurisdiction has proven particularly elusive," *Ingersoll Milling Mach. Co. v. M/V BODENA,* 829 F.2d 293, 301 (2d Cir. 1987)(quoting *CTI-Container Leasing Corp. v. Oceanic Operations Corp.*, 682 F.2d 377, 379 (2d Cir. 1982)), the abiding instruction of the Supreme Court is that we should look to the contract's "nature and character" to see "whether it has 'reference to maritime service or maritime transactions," *Norfolk S.Ry. Co.,* 125 S.Ct. at 393 (quoting *N. Pac. S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co.*, 249 U.S. 119, 125, 63 L.Ed 510, 39 S.Ct. 221 (1919); *Insurance Co. v. Dunham,* 78 U.S. 1, 26, 11 Wall. 1, 20 L. Ed. 90. Therefore, the contract's subject matter must be our focal point. See, e.g. *Exxon Corp.*, 500 U.S. at 611; *Dunham*, 789 U.S. (11 Wall.) at 29.

Folksamerica Reinsurance Company v. Clean Water of New York, 413 F.3d 307, 312 (2d Cir. 2005).

The conceptual approach articulated in Kossick and refined in Norfolk focuses the inquiry on whether "the principal objective of a contract is maritime commerce." Norfolk Southern Railway Co. v. Kirby, 543 U.S. 14, 25 (2004).  Stated differently, the contract must be sufficiently "salty" to support jurisdiction.  However, before addressing the maritime flavor, or lack thereof, of the instant Logistics Agreement, the Second Circuit requires a "threshold inquiry" into whether the subject matter of the dispute relates to the business of maritime commerce. Atlantic Mutual Insurance Co. v. Balfour Maclaine International, Ltd., 968 F.2d 196,

199 (2d Cir. 1992); <u>Folksamerica</u>, 413 F.3d at 312;  <u>Thypin Steel Co. v. Asoma Corp.</u>, 215 F.3d 273, 278-79 (2d Cir. 1994).  "Before attempting to categorize contractual rights as maritime or non-maritime, a federal court must first consider whether an *issue* related to maritime interests has been raised."  <u>Balfour</u>, 968 F.2d at 199 (emphasis added).

While it is not entirely clear whether this preliminary test of jurisdiction survives the <u>Norfolk</u> decision, the Second Circuit continues to conduct it.  <u>Folksamerica</u>, 413 F.3d at 413-141. [1]  In this case, the threshold inquiry serves to highlight the absence of any maritime connection to this dispute over the alleged breach of a construction logistics contract.

**(A)    THE SUBJECT MATTER OF THIS DISPUTE IS NOT MARITIME**

A court sitting in admiralty is limited to hearing matters affecting maritime commerce and must refuse to hear a case when "the *subject matter of the dispute* is so attenuated from the business of maritime commerce that it does not implicate the concerns underlying admiralty and maritime jurisdiction."  <u>Folksamerica</u>, 413 F.3d at 312; citing, <u>Atlantic Mutual</u>, 968 F.2d at 200 (emphasis added).  See also, <u>Sirius Insurance Co (UK) v. Collins</u>, 16 F.3d 34, 36 (2d Cir. 1994). In this case, the facts set forth in the Complaint arise from an alleged breach related to a prior settlement agreement and an alleged breach of an executory construction logistics contract, despite the maritime window dressing of the complaint.

---

[1] The "threshold inquiry" was absent from the Supreme Court's decision in <u>Kirby</u>, a fact noted by the Second Circuit in <u>Folksamerica</u>.  The Second Circuit stated, however, that the question of whether the "threshold inquiry" survived <u>Kirby</u> was unanswered and would await a "more appropriate case."  <u>Folksamerica</u>, 413 F.3d at 314.  To date, that appropriate case has, apparently, not appeared.

Setting aside, for the moment, the fact that the Logistics Agreement was executory and never performed, that agreement does not require the plaintiff to directly perform any maritime service. Rather, the contract requires the plaintiff to procure and enter into contracts with others to perform a broad range of services, some air-based, some land-based, as well as a few ocean-based, all in furtherance of a land-based construction project. (Norman Dec. ¶¶ 8-11)

This is nothing more than a land-based contract to enter into other contracts to further other land-based construction project(s). It has no particular maritime flavor merely because some of the sub sub contracts potentially contemplated might entail some amount of maritime activity in furtherance of the construction purpose. That slender connection is entirely too remote and speculative to pass the threshold requirement and support maritime subject matter jurisdiction despite the sprinkling of maritime phrases in the Complaint.

**(B)    THE LOGISTICS AGREEMENT IS AN EXECUTORY CONTRACT NOT COGNIZABLE IN ADMIRALTY**

Assuming *arguendo* that the dispute passes the maritime subject matter threshold, this Court still cannot exercise admiralty jurisdiction over the contract because the Logistics Agreement is an executory contract. See gen. The Saturnus, 250 F. 407, 408 (2d Cir. 1918), cert. denied, 247 U.S. 511 (1918); Rainbow Line, Inc. v. M/V TEQUILA, 480 F.2d 1024, 1027 (2d Cir. 1973); Proshipline Inc. v. Aspen Infrastructures Ltd. v. Suzlon Infrastructure Ltd., 533 F.Supp.2d 422 (S.D.N.Y. 2008).

In Proshipline, the district court dismissed an attachment predicated on an alleged breach of an executory contract in which the plaintiff, Proshipline, was to be compensated for providing services to any vessel under defendant Aspen's control that was expected to call at US ports in the future. Relying on an earlier decision in Dolco Investments Ltd. v. Moon River

Development Ltd., 486 F.Supp.2d 261, 267-268, the Proshipline court stated that "this type of contractual situation does not support a finding of admiralty jurisdiction." The attachment was dismissed under Rule E. There can be no logical distinction drawn between this decision and the instant case. Here, the Logistics Agreement was purely executory. Plaintiff never performed any service under the contract because defendant Ranhill was never awarded the construction contracts that the Logistics Agreement was contingent upon. (Norman Dec. ¶ 15). Thus, the Logistics Agreement falls outside of the Court's admiralty jurisdiction making Rule B attachment improper.


(C)    THE LOGISTICS AGREEMENT IS A NON-MARITIME PRELIMINARY SERVICES CONTRACT

Like executory contracts, preliminary services contracts have also been historically excluded from maritime contract jurisdiction. Maritima Petroleo E Engleharia Ltda v. Ocean Rig 1 AS, 78 F.Supp. 2d 162, 168 (S.D.N.Y. 2000); see also, Shipping Financial Services Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998)(collecting cases). "The policy underlying this doctrine is that services that are preliminary to, as opposed to being a part of maritime contracts, are too remote to be heard as maritime claims....For example, general agency and sub-agency contracts for "shore-side" functions are traditionally non-maritime" and excluded from admiralty jurisdiction. Maritima, 78 F. Supp. 2d at 167 (internal citations omitted).

In Maritima, this Court refused to exercise admiralty jurisdiction over a contract styled as a "Memorandum of Agreement" which authorized the plaintiff to enter into other contracts for drilling rigs on the defendant's behalf. Following the Supreme Court's decision in Exxon v. Central Gulf Lines, Inc., 500 U.S. 603, 611 (1991), this Court determined that the subject matter and nature of the services to be performed under the Memorandum of Agreement were simply

too remote from maritime commerce for the exercise of maritime jurisdiction.  This Court noted that while a contract to provide a drilling rig or vessel would fall within the Court's admiralty jurisdiction, an agreement to *procure* a contract for a drilling rig or a vessel would not. Maritima, 789 F. Supp.2d at 169; see also, Shipping Financial, 140 F.3d at 134.

In this case, the Logistics Agreement does not require the Plaintiff to directly perform any maritime service.  Instead, the Logistics Agreement requires the Plaintiff to perform a variety of services which might include entering into contracts for a maritime service. [2] (Norman Dec. ¶¶ 10, 11).  Except for the fact the Logistics Agreement was never performed, it is, in essence, no different from the Memorandum of Agreement at issue in Maritima, which this Court found to be too far removed from any maritime purpose to warrant the exercise of maritime jurisdiction.

### (D)    THE PRIMARY OBJECTIVE OF THE LOGISTICS AGREEMENT IS NOT MARITIME

To be a "maritime contract" which supports the Rule B attachment, the Plaintiff must demonstrate that the Logistics Agreement has, as its primary objective, the performance of a maritime obligation.  Norfolk, 543 U.S. at 24-26.   As discussed below, the Logistics Agreement purports to create obligations that are not primarily maritime in nature and, assuming that any were maritime, those few duties were so inextricably bound together with other non-maritime obligations that subject matter jurisdiction does not exist over the contract as a whole.

Generally, federal courts exercise admiralty jurisdiction over contracts only when the subject matter of the contract is "purely" or wholly maritime.   While this rule has been

---

[2] Assuming that any maritime service was performed or even contemplated.

"loosened" (see <u>Sirius</u>, 16 F.3d at 36) to include "mixed" contracts containing both maritime and non-maritime elements, the party asserting maritime jurisdiction over a mixed contract, like the Logistics Agreement, must demonstrate that the principle purpose or objective of the contract is maritime, keeping in mind the Supreme Court's instruction in <u>Norfolk</u> that "the fundamental interest giving rise to maritime jurisdiction is the protection of maritime *commerce*." <u>Norfolk</u>, 543 U.S. at 25; citing <u>Exxon</u>, 500 U.S. at 608. See also, <u>Folksamerica</u>, 413 F.3d at 314-315.

The effect that <u>Norfolk</u> had on the "purely" maritime/mixed contract doctrine and its concomitant jurisdictional analysis is still being sorted out by the courts. However, it appears that the rule remains that a court should not exercise maritime jurisdiction over a contract that is not wholly maritime unless its principal objective is maritime or the maritime obligation is capable of being "severed" from the non-maritime obligations and separately enforced. <u>Folksamerica</u>, 413 F.3d at 314-315; <u>Capital Yacht Club v. M/V AVIVA</u>, 409 F.Supp. 2d 1 (D.C. 2006); <u>Aston</u>, <u>infra</u>; <u>Hartford Fire Ins. Co. v. Orient Oversees Container Lines (UK) Ltd.</u>, 230 F.3d 549, 555 (2d Cir. 2000). If severable, the cause of action <u>must</u> arise out of the maritime obligation. <u>Atlantic Mutual Ins. Co. v. Balfour Maclaize Int'l, Ltd.</u>, 775 F.Supp. 101, 105 (SDNY 1991) <u>aff'd</u>, 968 F.2d 196, 199 (2d Cir. 1992).

The Supreme Court's decisions in <u>Exxon</u> and <u>Norfolk</u> emphasize that the purpose and objective of the contract as a whole determine if it is maritime. Accordingly, the Court in <u>Norfolk</u> held that intermodal bills of lading calling for ocean and land transport were not automatically disqualified from being "maritime contracts" by the presence of a land based obligation since the "primary objective is to accomplish the transportation of goods by sea." <u>Norfolk</u>, 543 U.S. at 24. The Supreme Court cautioned, however, if the "sea" component of a mixed contract was insubstantial, then the contract would not be maritime. *Id.* See also, <u>Aston</u>

Agro-Industrial AG v. Star Grain Ltd., 2006 U.S. Dist. Lexis 9163 at *3 (Dec. 20, 2006 S.D.N.Y.).

In Aston, the parties entered into contracts for the sale of grain which called for shipment by vessel and contained various clauses relating to the conditions of shipment, unloading of the cargo and demurrage. Thereafter, Star, the purchaser, entered into two separate charter contracts for the carriage of the wheat. The wheat was shipped, but arrived at the port of destination damaged leading to a demurrage claim governed by the contracts of sale.[3] An arbitration ensued which resulted in an award in favor of plaintiff Aston, who then sought Rule B attachment relief against Star. On a motion to vacate, the District Court addressed whether a contract for the sale of grain, which was to be carried by vessel under a related contract for ocean carriage, fell within the court's admiralty jurisdiction. The Court determined that it did not.

Applying the Norfolk primary objective test, the District Court found:

> the contracts are **not maritime contracts because their primary objective was not the transportation of goods by sea, but the sale of wheat. That the wheat was transported on a ship does not make the contracts maritime any more than it would make them aviation contracts had the wheat been shipped via airplane.** Nor were they contracts between a seller and a shipper. In fact, Aston entered into two separate charter parties to accomplish the shipment of the wheat, and it was the primary maritime objective of those contracts to transport the wheat by sea. Thus, the charter parties between the seller and the shipper, like the bills of lading in Kirby, are maritime contracts, see, e.g. *Asoma Corp. v. SK Shipping Co.,* 467 F.3d 817 (2d Cir. 2006)("Charter parties and bills of lading are interpreted using the ordinary principles of maritime contract law."). The contracts for the sale of wheat are not.

Aston, 2006 U.S.Dist. Lexis at 3 (emphasis added).

---

[3] The issue at arbitration was whether the sellers were entitled to demurrage even if they were not liable themselves for it under the relevant charterparties.

The Aston analysis compels the same conclusion in this case:  the Logistics Agreement is not maritime because its primary objective is not the transportation of goods by sea, or any other maritime commerce objective, but the creation of contractual rights in furtherance of a prospective land-based construction project. (Norman Dec. ¶ 7, Ex. 1).  The first cause of action seeks breach of contract damages arising out of a prior settlement agreement.  Breach of a settlement agreement is not cognizable in admiralty.  See, Fednav, Ltd. V. Isoromar, S.A., 925 F.2d 599, 601 (2d Cir. 1991).  In Fednav, the Court excluded a breach of contract to pay a settlement from admiralty jurisdiction.  The Court stated:  "[t]he reason for this rule is clear:  'The direct subject-matter of the suit is the covenant to pay such damages, which neither involves maritime service nor maritime transactions; and…the mere fact that the event and measure of liability are referable to the charter party does not make the [agreement to pay] a maritime contract, nor make its obligation maritime in the jurisdictional sense." Fednav, 925 F.2d at 601 (citations omitted).

Similarly, the claims under the second cause of action seek recovery of sums allegedly owed under a different logistics contract or agreement as the contract sued upon was never performed and remained wholly executory and/or preliminary, making this claim no different from that in Fednav, where the agreement to pay was too far removed contractually from any maritime obligation or service to merit the application of admiralty jurisdiction.  Likewise, the claim for lost profits fails under the executory contract doctrine discussed supra.

Neither can maritime jurisdiction be exercised in this case because any alleged maritime obligation in the Logistics Agreement is "severable." Aston Agro-Industrial AG v. Star Grain Ltd., 2006 U.S.Dist Lexis 91636 at *3 (Dec. 20, 2006 S.D.N.Y) citing Hartford Fire Ins. Co. v. Orient Oversees Container Lines (UK) Ltd., 230 F.3d 549, 555 (2d Cir. 2000). In Aston, after

13

determining that the grain contracts lacked any connection to maritime commerce, the Court also examined them to see if they were "severable" under the exception to the "purely" maritime/mixed contract doctrine.[4]   After stating the general rule that a federal court "can exercise admiralty jurisdiction over a 'mixed' contract if …the claim arises from a breach of maritime obligations that are severable from the non-maritime obligations of the contract." Hartford Fire Ins. Co. v. Orient Oversees Container Lines (UK) Ltd., 230 F.3d 549, 555 (2d Cir. 2000) the Court found that the "contracts create no maritime obligations on Star Grain, let alone any maritime obligations that are severable from the non-maritime obligations.  Aston Agro-Industrial AG v. Star Grain Ltd., 2006 U.S.Dist Lexis 91636 at *3 (Dec. 20, 2006 S.D.N.Y.).

Another recent decision also applied that the "severable" analysis for mixed contracts and concluded that admiralty jurisdiction did not attach even when the controversy concerned wharfage fees owed by a vessel[5].  In Capital Yacht Club v. M/V AVIVA, 409 F. Supp.2d 1 (DC 2006) the District Court determined that a contract dispute over unpaid wharfage for the vessel AVIVA was not maritime because that contract also included non-maritime obligations to pay membership dues for land-based services that were not severable.  The same is true in the case at bar.

Maritime and non-maritime obligations are "severable" when the maritime and non-maritime obligations can be separately enforced.  Compagnie Francaise de Navigation a Vapeur v. Bonnasse, 19 F.2d 777 cert. denied, 275 U.S. 551 (1927).  See, Atlantic Mutual Insurance Co. v. Balfour Maclaine International Ltd., 775 F.Supp. 101, 105 (S.D.N.Y. 1991) aff'd 968 F.2d

---

[4] Applying the Second Circuit's analysis in Folksamerica, the District Court in Aston determined that the Supreme Court did not vitiate the "severability" exception to the general rule that maritime jurisdiction applies only to wholly maritime contracts.  Thus, a court can only exercise admiralty jurisdiction over the maritime obligations created by a mixed contract when they are capable of being "severed" from the non-maritime obligations.

[5] Capital Yacht also holds that the traditional test for severability survived Norfolk.

196, 199 (2d Cir. 1992).    (Maritime and non-maritime elements were separable because obligations under the Shore Risks coverage were capable of being carved out from the maritime coverages, a separate premium was assessed and paid and the cover did not require ocean transportation for the coverage to attach to stored goods)

See also, Kuehne & Nagel v. Geosource, Inc., 874 F.2d 283, 290 (5th Cir. 1989) (Maritime and non-maritime obligations of a contract covering land and sea transportation not severable where land based operations were substantial, alleged breach of contract covered both the land and sea based elements of the contract and a single fixed freight charge was assessed for all elements of the transportation. See also, Transatlantic Marine Claims Agency, Inc. v. M/V HYUNDAI EMPEROR, 109 F.3d 105, 109 (2d Cir. 1997)(Severability question rendered "irrelevant" since the loss "undoubtedly occurred during non-maritime activity, and we could not exercise admiralty jurisdiction over that portion of a "mixed" contract." Id.).

Compared to the Logistics Agreement in the instant case, it is clear that any maritime obligations are not "severable" or capable of being separately enforced, even assuming that the Complaint states any cause of action arising out of a maritime obligation.   The Norman Declaration (¶¶ 8-12) makes clear that any potential maritime service is inextricably bound with other non-maritime services such that separate enforcement is impossible.

## CONCLUSION

Based on the foregoing, it is clear that the Complaint fails to state a claim cognizable in admiralty and the Rule B attachment is improper.   Defendant Ranhill respectfully requests that the complaint be dismissed, the attachment vacated and all restrained funds/property released

and that Ranhill be awarded its damages, costs and fees in connection with the improper

attachment.

Dated: New York, New York
    April 21, 2008

                              Respectfully submitted,

                              NOURSE & BOWLES, LLP
                              Attorneys for Defendant
                              RANHILL ENGINEERS AND
                              CONSTRUCTORS SDN. BHD.


                    By:    _Shaun F. Carroll/jn_
                              Shaun F. Carroll (SC-9898)
                              One Exchange Plaza
                              At 55 Broadway
                              New York, New York 10006
                              (212) 952-6200


SHAUN F. CARROLL, ESQ.
JULIA M. MOORE, ESQ.
    Of Counsel